**SERVICE ARMAMENT CO., for itself and as successor in interest to Navy Arms Co., Inc.**

v.

**The UNITED STATES.**

**No. 348–76.**

United States Court of Claims.

Dec. 14, 1977.

Jerald D. Baranoff, Newark, N. J., for plaintiff; Clive S. Cummis, Newark, N. J., attorney of record; Sills, Beck, Cummis, Radin & Tischman, Newark, N. J., of counsel.

George L. Squires, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before COWEN, Senior Judge, DAVIS and NICHOLS, Judges.

COWEN, Senior Judge.

Plaintiff, a manufacturer and importer whose business involves the sale of muzzle-loading replicas of antique firearms, brought this action to recover excise taxes assessed against and paid by it for the second quarter of 1969 through the third quarter of 1972, in the amount of $226,-113.84, plus interest. The sole issue is whether plaintiff's products are subject to the excise tax imposed by 26 U.S.C. § 4181.

The defendant filed a motion for partial summary judgment on the ground that plaintiff's claims for a refund were not timely with respect to the following:

(a) Amounts claimed by plaintiff for the fourth quarter of 1968 except for $67.99 paid on November 1, 1971.

(b) Amounts claimed by plaintiff for the first quarter of 1969 except for $321.24 paid on March 20, 1972.

(c) Amounts claimed by plaintiff for the second quarter of 1969 except for $335.35 paid on September 1, 1971.

(d) Amounts claimed by plaintiff for the third quarter of 1969 except for $330.88 paid on September 1, 1971.

(e) Amounts claimed by plaintiff for the fourth quarter of 1969 except for $335.06 paid on March 3, 1972.

Plaintiff responded with a cross-motion for summary judgment seeking recovery of the total amount of excise taxes covered by its claims for refund.[1]

Thereupon, the government filed a motion for judgment on the pleadings, which we treat as a cross-motion for summary judgment, because the Government has relied on material outside the pleadings.[2] At oral argument, plaintiff conceded that defendant's motion for partial summary judgment should be granted.

The facts essential to our decision are not in dispute. The taxpayer is an arms manufacturer and importer, whose business involves the sale of replicas of antique firearms to customers desiring them for collection, cultural, and sporting purposes. Taxpayer's prime business is the distribution and sale of muzzle-loading replicas of antique firearms in which powder and a projectile are inserted and the powder is ignited through the use of a flint or cap.

The precise issue in this case has been decided in favor of the government in a memorandum opinion[3] of September 13, 1977 by Honorable John F. Grady, Judge of the United States District Court for the Northern District of Illinois, Eastern Division, *Mars Equipment Corp. v. United States*, 437 F.Supp. 97. We concur in both the reasoning and the result reached by the District Court and therefore enter a judgment denying plaintiff's motion for summary judgment and granting both of defendant's motions.

However, since some contentions have been made to us that were apparently not raised in the District Court, we shall set forth the basis for our decision in somewhat greater detail than was done in the memorandum opinion of the District Court.

### I.

Section 4181 of the Internal Revenue Code imposes a tax on the sale by a manufacturer, producer or importer of firearms (other than pistols and revolvers) and on shells and cartridges of 11 percent.[4] 26 C.F.R. § 48.4181–2 promulgated pursuant to section 4181 defines firearms and shells as follows:

(c) *Firearms.* The term "firearms" means any portable weapons, such as rifles, carbines, machine guns, shotguns, or fowling pieces, from which a shot, bullet, or other projectile may be discharged by an explosive.

(d) *Shells and cartridges.* The terms "shells" and "cartridges" include any combination of projectile, explosive, and container which is designed, assembled, and ready for use without further manufacture in firearms, including pistols and revolvers.

It is undisputed that the products against which the tax was assessed and collected are firearms and the plaintiff here admits that both antique and replica firearms, as

---

**1.** In its motion, plaintiff also seeks a declaratory judgment that its sale and importation of replica firearms is not subject to § 4181. This court does not have jurisdiction to render declaratory judgments except in certain tax cases as provided in 26 U.S.C. § 7428 (Tax Reform Act of 1976), but we may disregard this request for relief, because we have jurisdiction of plaintiff's action for the refund of excise taxes paid if a timely claim for refund has been filed.

**2.** Our Rule 38(c) provides: "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and are not excluded by the court, the motion shall be treated as one for summary judgment * * *."

**3.** (1977) 77–2 U.S.T.C. (CCH) para. 16273.

**4.** *26 U.S.C. § 4181 provides:*

"There is hereby imposed upon the sale by the manufacturer, producer, or importer of the following articles a tax equivalent to the specified percent of the price for which so sold:

"Articles taxable at 10 percent—

"Pistols.

"Revolvers.

"Articles taxable at 11 percent—

"Firearms (other than pistols and revolvers).

"Shells, and cartridges."

manufactured and distributed by it, are capable of exploding a projectile from barrels and therefore that these articles fall clearly within the definition of "firearms" in the regulation.

## II.

In an effort to show that its antique guns and their replicas are not subject to the excise tax, plaintiff has advanced a number of contentions. Its major argument is that by statutory changes made in 1954 and 1968 in the definition of "firearms," Congress evinced an unmistakable intent to relieve the antique and replica firearms from the onus of excise taxation. In order to deal with this contention, it is necessary to consider the legislative history of section 4181 and its predecessors, Chapter 53 of the Internal Revenue Code of 1954 (which replaced Chapter 25 of the Internal Revenue Code of 1939), and the Gun Control Act of 1968, 82 Stat. 1213.

The National Firearms Act (48 Stat. 1236) was approved June 26, 1934. Its primary purpose was to make it "more difficult for the gangster element to obtain certain types of weapons." *See* S.Rep. No. 1303, 86th Cong., 2d Sess. p. 2 (1960–1, C.B. 848, 849). Part of the National Firearms Act was codified in section 2733(a) of the Internal Revenue Code of 1939 (26 U.S.C. 1952 ed.). In section 2733(a), firearms were defined to include all weapons, except pistols and revolvers, from which a shot is discharged by an explosive if the weapon is capable of being concealed on the person. This provision was interpreted by the Treasury Department to include antique and replica firearms.

Plaintiff relies on section 5848 of the Internal Revenue Code of 1954 (68A Stat. 726), which amended section 2733 of the 1939 Code to exclude antique firearms by providing that "weapon" as therein defined does not include one which is not capable of being fired with fixed ammunition. Congress stated that the purpose of the change in definitions as set forth in new· section 5848 was as follows:

§ 5848. Definitions

This section is the same as present section 2733, except that three new provisions have been added which define "rifle," "shotgun," and "any other weapon." These new definitions are needed for the reason that Congress did not define such weapons when the National Firearms Act was enacted in 1934 although it did define "machinegun." Since Congress did not define these weapons it has been necessary to use the ordinarily accepted definitions thereof appearing in acceptable, standard dictionaries. In so doing, and because of a technical application of the definition of the term "firearm," as it appears in the present statute, many weapons firing projectiles by the action of an explosive have been brought within the scope of the National Firearms Act although it is believed the Congress did not intend that such weapons should be included. For example, under a technical interpretation of the term "firearm," blunderbusses, muzzle-loading shotguns, and other ancient or antique guns have been considered subject to the National Firearms Act and in many instances the requirements thereof have been imposed. As a result of these interpretations, over a period of years, restrictions have been imposed on a certain class of persons, namely, antique gun collectors, and it is felt that these restrictions should be removed in pursuance of the clearly indicated congressional intent to cover under the National Firearms Act only such modern and lethal weapons, except pistols and revolvers, as could be used readily and efficiently by criminals or gangsters. Moreover, for proper administration of the National Firearms Act it is considered highly proper and desirable that the Congress define the terms "rifle," "shotgun," and "any other weapon" so as to remove any doubt as to the type of firearms which Congress intended to bring within the scope of the National Firearms Act [H.R.Rep.No.1337, 1954 *U.S.Code Cong. and Adm.News*, p. 4542, 83d Cong., 2d Sess.].

Prior to the 1954 amendment, antique gun collectors and other owners of these weapons were subject to a number of restrictions imposed by the National Firearms Act, which had been codified in Chapter 25, Subchapter B of the Internal Revenue Code of 1939 (26 U.S.C. 1952 ed.). These included a requirement for the registration of a firearm by every person possessing one (section 2720(d)); a provision declaring it to be unlawful for any person to transfer a firearm except on a written order set forth on an application form issued by the Commissioner (section 2723), and a provision making it unlawful to possess any firearm transferred in violation of the provisions of Subchapter B or to change the identification marks on any firearm (section 2726(a) and (b)). Penalties were prescribed for violations of the provisions of Subchapter B (section 2729) and for the forfeiture of any firearm transferred in violation of the provisions of that subchapter (section 2730). These restrictions were re-enacted without substantial change in 1954 in Chapter 53 of the Code. Some of the same restrictions were also re-enacted in the Gun Control Act of 1968 and are codified in Chapter 53 of the Code.

We think it is apparent from the legislative history cited above that section 5848 was enacted to relieve antique gun collectors from the restrictions imposed upon them by prior law, and we find nothing in the legislative history or the language of the amendment to indicate that Congress intended to exempt antique firearms from the tax imposed by section 4181 of the 1954 Code, which was passed at the same time. Plaintiff agrees that the "manufacturer's excise tax applicable to firearms was routinely re-enacted in the 1954 Code and renumbered as § 4181." [5] As we shall show, *infra*, Congress is deemed to have been aware in 1954 of a 1935 Treasury regulation which defined firearms in language which included the firearms in issue here.

Plaintiff also relies heavily on the Gun Control Act of 1968 (82 Stat. 1213) which contained a general revision of Chapter 53 of the Code. The revision included a new section 5845 (codified as 26 U.S.C. § 5845) which replaced section 5848 for the definition of firearms. Section 5845(a) provides in part as follows:

* * * The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary or his delegate finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

In subsection (g) of section 5845, "antique firearm" is defined as a firearm or replica thereof which was not designed or redesigned for using rim fire or conventional center fire ignition with fixed ammunition.

Section 5845 excludes antique weapons and replicas thereof from the definition of firearms for the purposes of the other provisions of Chapter 53 of the Code. However, the declared purpose of the Gun Control Act of 1968 is "to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence * * *." (82 Stat. 1213). Plaintiff has pointed to nothing in the language of the statute or its legislative history, which indicates that a definition in a law enacted to fight crime was intended to apply to or affect an excise tax provision which was enacted for the purpose of producing revenue. The language of section 5845 is to the contrary, for its opening line reads: "For the purpose of this chapter—." Without more, this express limitation is sufficient to convince us that section 5845 was not intended to apply to section 4181, which is contained in Chapter 32 of the Code, entitled "Manufacturers Excise Taxes."

In contrast to plaintiff's failure to furnish any persuasive support for its position in the cited portions of the 1954 and 1968 Acts, we find that the legislative re-enactment of the excise tax on firearms, coupled with a consistent administrative interpretation over a period of many years, strongly supports the Government's contentions.

**5.** Plaintiff's Brief at p. 12.

An excise tax on firearms was first enacted in the Revenue Act of 1918 (40 Stat. 1122) to raise revenues to defray war expenses. This law continued in effect until 1926 when the tax on firearms (except pistols) was eliminated. Because of the reduction in receipts from income taxes as a result of the depression, Congress again imposed the excise tax on firearms in the Revenue Act of 1932, 47 Stat. 264. *See* H.R.Rep.No.708, 72d Cong., 1st Sess., pp. 3, 8 (1939–1 C.B. (Part 2)) 457, 458–59, 463. The statutory language was almost identical to that in current section 4181.

In 1935, the Treasury Department issued Article 58, Treas.Reg. 46, defining the term "firearms" as used in the 1932 Act as follows:

> The term "firearms" as used in the Act includes all portable weapons, such as rifles, carbines, machine guns, shotguns, and fowling pieces, from which a shot, bullet, or projectile may be discharged by an explosive.

In 1960, Treasury promulgated the current regulation, section 48.4181–2(c), quoted *supra*. The definition of firearms therein is virtually identical to that set forth in the 1935 regulation.

Thus, the definition of "firearms" in the regulations has remained with no significant change since 1935. The re-enactment in section 4181 of prior law without substantial amendment, plus the Treasury's long-standing and consistent administrative interpretation, must be deemed to have received Congressional approval. *United States v. Leslie Salt Co.*, 350 U.S. 383, 396–97, 76 S.Ct. 416, 100 L.Ed. 441 (1956); *Knapp King-Size Corp. v. United States*, 527 F.2d 1392, 1400, 208 Ct.Cl. 533, 548 (1975).

The consistent administrative interpretation of section 4181 is further demonstrated by a revenue ruling that has been outstanding for almost 20 years. Rev.Rul. 57–606, 1957–2, C.B. 733 provides as follows:

> Whether a firearm is an antique is immaterial in determining the applicability of the manufacturers excise tax. Accordingly it is held that sales of antique firearms by an importer are subject to the manufacturers excise tax imposed by section 4181 of the Code.

Rev.Rul. 74–137, 1974–1, C.B. 313 also relates to the excise tax on replicas of antique pistols, revolvers and rifles, and reaches the same conclusion.

### III.

Plaintiff's next challenge to the taxability of its products is based on the Act of September 2, 1937, 50 Stat. 917 (codified at 16 U.S.C. § 669b, which set aside the proceeds of the firearms excise tax for the aid of wildlife restoration projects. On account of the earmarking of the tax collections, plaintiff argues that the tax became, in effect, a user charge imposed on hunters who are the prime beneficiaries of Federal expenditures for wildlife restoration, and consequently, that only firearms used in hunting should be subjected to the tax.

Plaintiff maintains that since those who purchase replicas of antique firearms are seldom beneficiaries of the wildlife restoration projects, Congress did not intend that the excise tax should be borne by owners of antique weapons. This is an interesting and ingenious argument, but we reject it, because there is nothing in either the language or the legislative history of 16 U.S.C. § 669b to indicate that Congress intended to amend the excise tax law enacted in 1932 to tax only weapons used in hunting wild animals. Moreover, as the District Court observed in *Mars Equipment Corp. v. United States, supra*, there is "no legal requirement that the taxpayer be the direct beneficiary of a tax."

### IV.

Plaintiff's final argument is that Congress intended a congruency between the firearms and the ammunition which are taxed in section 4181. Specifically, plaintiff asserts that "the plain meaning and objective of taxing shells and cartridges, as well as firearms, is to tax those shells and cartridges which are used within those firearms." Plaintiff calls attention to 18

U.S.C. § 845(a)(5), which exempts from the regulatory provisions on explosives the purchase of commercially manufactured black powder and certain igniters in amounts not exceeding 5 pounds, where these are intended to be used for sporting, recreational, or cultural purposes in antique weapons.

Since section 4181 does not include within its terms commercially manufactured black powder and percussion caps, the only ammunition which antique firearms are designed to use, plaintiff says that it follows that Congress did not intend to tax antique weapons. Although there is some logic in this argument, it is far outweighed by the other factors which we have discussed above. Those factors more directly and specifically reveal the Congressional intent to tax the firearms in issue. Therefore, we cannot accept plaintiff's argument as a basis for decision.

## CONCLUSION

It follows from the foregoing opinion that plaintiff's motion for summary judgment is denied; defendant's motion for partial summary judgment and its motion for judgment on the pleadings, which we have treated as a motion for summary judgment, are granted and plaintiff's petition is dismissed.