**MARS EQUIPMENT CORPORATION,**
an Illinois Corporation,
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 77–2164.

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1978.

Decided July 21, 1978.

Rehearing Denied Aug. 10, 1978.

Edward Kaplan, Chicago, Ill., for plaintiff-appellant.

Daniel F. Ross, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before PELL and WOOD, Circuit Judges, and HARPER, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The principal question presented in this appeal is whether Treasury Regulation § 48.4181–2(c) constitutes a reasonable definition of a "firearm" as that word is used in

---

* The Honorable Roy W. Harper, Senior United States District Judge for the Western District of Missouri, is sitting by designation.

Section 4181 of the Internal Revenue Code to the degree that it is interpreted to include antique muzzle-loading guns and replicas thereof. The district court upheld the regulation in question and we affirm.

Mars Equipment Corporation imports and sells antique guns and replicas of muzzle-loading antique guns. From 1968 through 1970 Mars paid $37,019.70 in excise taxes imposed on the sale of firearms by Section 4181 of the Internal Revenue Code. Mars then filed this suit in the district court pursuant to 28 U.S.C. § 1346(a)(1) for a refund of the taxes paid on the grounds that antique guns and replicas are not "firearms" within the meaning of that section. The district court granted the government's motion for summary judgment, from which Mars now appeals. We have jurisdiction of the appeal under 28 U.S.C. § 1291.

### I.

■ Section 4181 of the Code provides that:

> There is hereby imposed upon the sale by the manufacturer, producer, or importer of the following articles a tax equivalent to the specified percent of the price for which so sold:
>
> Articles taxable at 10 percent—
> Pistols.
> Revolvers.
> Articles taxable at 11 percent—
> Firearms (other than pistols or revolvers)
> Shells, and cartridges.

Treasury Regulations on Manufacturers and Retailers Excise Tax Section 48.4181–2(c) defines "firearms" as used in this section to be "any portable weapons, such as rifles, carbines, machine guns, shotguns, or fowling pieces, from which a shot, bullet, or other projectile may be discharged by an explosive." This regulation has long been construed to include antique guns and working replicas of antique guns. Treasury regulations issued pursuant to Section 7805(a) of the Code are to be upheld if they "implement the congressional mandate in

some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967). Here, Mars argues that the inclusion of antique guns and replicas in the definition of "firearms" is contrary to the intent of Congress.

Many of the arguments advanced by Mars in support of its contention have been dealt with in the district court's opinion in this case, 437 F.Supp. 97 (N.D.Ill.1977), and in the Court of Claims' analysis in a case involving similar issues, *Service Armament Co. v. United States*, 567 F.2d 377 (Ct.Cl. 1977), *cert. denied* —— U.S. ——, 98 S.Ct. 2262, 56 L.Ed.2d 758 (1978). Since we concur with the reasoning and observations of those two courts, we need not dwell on Mars' arguments here.

Mars first argues that the legislative history of Section 4181 and related sections and their predecessors reveals a congressional intent to tax only guns primarily used in hunting. Here, Mars relies principally on the fact that in 1937 Congress earmarked the funds collected under the 1932 excise tax on firearms for use in wildlife restoration projects. We see nothing in this earmarking which indicates that the revenue-raising thrust of the 1932 tax was to be restricted to guns likely to be purchased by sportsmen. In fact, as Mars itself points out, in 1970 Congress added the excise taxes collected on pistols and revolvers to those already flowing into the wildlife fund in spite of a Treasury Department objection that pistols and revolvers are not generally used in hunting and that the purchasers of such guns would not tend to benefit from the expenditures financed out of the wildlife fund.[1] Since Congress was thus willing to earmark for conservation purposes taxes collected on guns not generally used in hunting, it is difficult to infer from the earmarking program an intent to limit collection of the excise tax to guns generally so used. See also the discussion in *Service Armament*, 567 F.2d at 381, and *Mars Equipment*, 437 F.Supp. at 99.

Mars also finds a congressional intent not to extend § 4181 taxation to antique guns

---

1. We cannot accept Mars' argument that by taking this position before Congress in 1970 the

Treasury is now estopped from arguing that § 4181 is not limited to hunting weapons.

and replicas in the fact that Congress excluded such guns from the definitions of "firearm" that it employed in modifying the National Firearms Act[2] and in passing the Gun Control Act of 1968.[3] However, both of these definitions are explicitly limited in applicability to the chapters involved and, given the law enforcement purposes of those chapters, do not strongly suggest that Congress meant to create an implicit exception from the revenue-raising provisions of § 4181. *See Service Armament,* 567 F.2d at 379–81.

Mars' last contention is that Regulation § 48.4181–2(c) is "unreasonable" and "vague" because it has been construed to exclude stud guns and flare guns, but not antique guns and replicas. However, as the district court noted, 437 F.Supp. at 100, the regulation only covers *weapons.* Although flare guns and stud guns may be capable of being used as weapons, they are not normally characterized as such, and that is not their primary purpose. We thus agree with the district court and the Court of Claims that Regulation § 48.4181–2(c) is a reasonable definition of the term "firearm" even though it has been construed to apply to antiques and replicas.

## II.

Mars also contends that the district court erred in denying its Fed.R.Civ.P. 34 motion for the production of certain documents relating, *inter alia,* to the treatment of other sellers of antique guns under § 4181. Since the government would not generally be estopped by a failure to impose the excise tax on another taxpayer,[4] we cannot say that the district court's conclusion that the documents sought were of minimal relevancy constituted an abuse of discretion. Moreover, as noted by the district court, Mars' attempt to rely on the "memorandum of the understanding" between the IRS and the Tax Analysts and Advocates group reached in the latter's Freedom of Information Act suit is misplaced in that the agreement related only to proposed legislation and Mars was not a party thereto.

The judgment of the district court is AFFIRMED.

---

2. The new 26 U.S.C. § 5845(a) provides in pertinent part:
. . . . The term "firearm" shall not include an antique firearm or any device (other than a machine gun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

3. 18 U.S.C. §§ 921(a)(3) and (16) provide:
(a) As used in this chapter—
(3) The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.
(16) The term "antique firearm" means—

(A) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and
(B) any replica of any firearm described in subparagraph (A) if such replica—
(i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or
(ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

4. The district court properly noted that because Mars did not request a Revenue Ruling on the taxability of its guns, the approach adopted by the Court of Claims in *International Business Machines, Inc. v. United States,* 343 F.2d 914, 170 Ct.Cl. 357 (1965), would probably not apply.