**AUTO–ORDNANCE CORP.**

v.

**The UNITED STATES.**

**No. 285–84T.**

United States Claims Court.

July 2, 1986.

Samuel S. Yasgur, White Plains, N.Y., for plaintiff. Morton A. Smith and Hall, Dickler, Lawler, Kent & Friedman, of counsel.

Robert W. Metzler, Washington, D.C., with whom was Acting Asst. Atty. Gen. Roger M. Olsen, for defendant.

## MEMORANDUM OF DECISION

HARKINS, Judge:

Plaintiff Auto-Ordnance Corporation seeks to recover a refund of manufacturer's excise taxes, imposed by section 4181 of the Internal Revenue Code of 1954 (26 U.S.C. § 4181 (1982)), in the amount of $44,038.58 for the tax periods ended March 31, 1976, through December 31, 1978, and interest and penalties in the amount of $18,029.66.

The case is before the court on plaintiff's motion for partial summary judgment and defendant's cross-motion for summary judgment. After completion of discovery, at oral argument on December 17, 1985, counsel were unable to agree as to whether material facts remained in dispute. Subsequently, counsel filed a stipulation of all facts believed to be material to determination of plaintiff's claim for a refund. Further briefing or oral argument on the cross-motions for summary judgment is unnecessary.

### FACTS

The facts as stipulated by the parties are as follows:

1. During each of the quarters at issue, plaintiff manufactured and sold semi-automatic carbines (i.e. small rifles) that are modeled after the fully automatic Thompson submachine guns. These products of the plaintiff were designed, on the exterior, to resemble the 1921 and 1928 models of the Thompson submachine gun. The barrels of these products are 6½″ longer than the barrels of the guns on which they are modeled. These carbines can only be fired in a semi-automatic mode.

2. The Deluxe Model, whose compensator and Lyman type adjustable rear sight are the subject of this litigation, was one of two models offered for sale under the general heading Model 1927 A-1. The other model was the Standard Model. Both of the models are classified as carbines or small rifles. The differences between the Standard Model and the Deluxe Model are as follows:

| Item | Standard Model | Deluxe Model |
|------|----------------|--------------|
| Barrel | Plain | Finned |
| Rear Sight | Stamped Sight (not adjustable) | Lyman type rifle sight (adjustable) |
| Foregrip | Horizontal | Vertical |
| Compensator | None | Threaded Compensator |
| Front Sight | Standard unthreaded ring | Blade front sight (also referred to as a compensator sight) |

Except for the front sight, each of the listed features of the two models are interchangeable. To attach the blade front sight, a compensator is necessary. The customer may order the combination of items preferred by designating the appropriate model or by specifying certain combinations of items.

3. The front sight of the Deluxe Model and the compensator of the Deluxe Model are two pieces specially designed to be fitted together. The front sight for the compensator slides into a dovetail or slot in the compensator. The compensator was threaded and screwed onto the front of the barrel. When the Deluxe Model was ordered, the compensator front-sight unit was installed at the factory.

4. Unlike the compensator/front sight combination featured on the Deluxe Model, the front sight featured on the Standard Model had an integral unthreaded mounting ring which was pressed over the front end of the barrel. The standard ring sight could not be put on the front of a barrel if there was a compensator on it.

5. The theoretical purpose of a compensator is to hold down muzzle rise and reduce recoil by allowing gas to escape through a series of vents. Whether or not the compensator of the Deluxe Model actually holds down muzzle rise or reduces recoil is debatable. The only way to mea-

sure the extent to which the compensator holds down muzzle rise or reduces recoil for a particular weapon is to test it on a ballistics pendulum. No such tests have been performed on the Deluxe Model. Neither party believes that facts relating to the ability of the compensator to hold down muzzle rise or reduce recoil are essential for a determination of the legal issues presented by the motions.

6. The standard front sight and the compensator/front sight could be exchanged, one for the other, in about twenty minutes using standard hand tools, such as a strap wrench. If the unthreaded ring sight were placed on the barrel of the Deluxe Model, it could damage the threads of the barrel.

7. The receiver of the Deluxe Model and the Standard Model are identical. Each has four holes designed to accept a rear sight.

8. The rear sight of the Deluxe Model was a Lyman-type rifle sight also called an adjustable sight. This Lyman-type rifle sight was pop riveted onto the rear of the receiver of the Deluxe Model at the factory and contained an adjustable "ladder" also called a leaf. When the ladder was down, the sight functioned like a non-adjustable sight. The ladder could be raised to enable the operator of the weapon to adjust the vertical aiming point to compensate for distances.

9. The rear sight of the Standard Model differed from the rear sight of the Deluxe Model. It did not contain an adjustable ladder. Like the sight for the Deluxe Model, the standard rear sight was pop riveted to the rear of the receiver. The leaf of the rear sight of the Deluxe Model could not practically be affixed to the rear sight of the Standard Model. The standard rear sight and the adjustable rear sight could be exchanged, one for the other, in about five minutes using commonly available hand tools, such as a drift punch.

10. The quality control department of the plaintiff uses a home-made aluminum ruler type device to ensure that the front and rear sights of the Standard Model and the Deluxe Model are aligned properly.

11. The front sight of the Deluxe Model enabled an average marksman to aim the Deluxe Model more accurately than he could without the front sight.

12. The combination of the front sight and the rear sight of the Deluxe Model enabled an average marksman to aim the Deluxe Model more accurately than he could with no sight or just one sight.

13. The Deluxe Model is capable of discharging a bullet by means of an explosive force if its rear sight and compensator/front sight unit are removed.

14. Plaintiff had price lists which stated a list price, a dealer price, and a jobber price for both the Deluxe Model and the Standard Model. Plaintiff also had a standard form dealer order blank and discount schedule which stated a list price and a dealer price for both the Deluxe Model and the Standard Model.

15. Plaintiff's dealer ordering instructions stated in part "[w]hen ordering please specify Deluxe or Standard Model."

16. Plaintiff advertised the Deluxe Model and the Standard Model as separate models of the Model 1927 A–1, often providing a picture of each model. In the advertisements, the Deluxe Model was shown with the compensator front-sight unit affixed.

17. Plaintiff's catalogues, price lists, and dealer order blanks did not state a separate price for a package of items consisting of the finned barrel, the vertical foregrip, the compensator, the compensator sight, and the adjustable (Lyman) rear sight. The catalogues did state separate prices for each such item which could be ordered individually or in combination as desired by purchaser.

18. Plaintiff's catalogues did state separate list prices for most, if not all, of the items featured on the Deluxe Model and for most, if not all, of the items featured on the Standard Model.

19. If an item of the Standard Model that differed from an item of the Deluxe Model (see Stipulation 2) was sold separate-

ly, its price was different from the price of the corresponding item of the Deluxe Model when sold separately. For example, the separate prices for the items that differed between the two models in plaintiff's catalogue No. 2 are as follows:

| Standard Model | | Deluxe Model | |
|---|---|---|---|
| (a) Plain barrel | $19.50 | Finned barrel | $27.50 |
| (b) Standard rear sight | 3.75 | Adjustable rear sight complete | 37.50 |
| (c) Horizontal foregrip | 6.75 | Vertical foregrip | 12.50 |
| (d) Front sight standard ring | 2.75 | Compensator, less front sight | 18.50 |
| | | Front sight for compensator | 2.50 |

20. When selling the Deluxe Model, plaintiff initially listed a separate charge for the rear sight, compensator, and front sight on some, but not all, of the invoices. It did not list a separate charge for the vertical foregrip or the finned barrel. Eventually, any separate listing of a charge for the rear sight, compensator, and front sight on the bills to the customer was discontinued.

21. Plaintiff's position is that it paid an excise tax with respect to the value of a set of standard sights, front and rear, for all weapons sold, regardless of model.

22. For each of the quarters ended March 31, 1976, through December 31, 1978, plaintiff's excise tax returns were audited by the Internal Revenue Service. The Commissioner determined that in computing the excise tax on firearms and pistols, plaintiff improperly reduced the base selling price of the units sold. Accordingly, there was assessed additional tax as follows:

| Quarter Ending | Item Sold | Additional Assessment |
|---|---|---|
| March 31, 1976 | Firearms | $ 7,474.48 |
| June 30, 1976 | Firearms | 6,550.44 |
| September 30, 1976 | Firearms | 4,191.20 |
| December 31, 1976 | Firearms | 3,718.00 |
| | Total for the year | $21,934.12 |
| March 31, 1977 | Firearms | $ 3,752.99 |
| June 30, 1977 | Firearms | 4,541.04 |
| September 30, 1977 | Firearms | 1,640.65 |
| December 31, 1977 | Firearms | 1,769.04 |
| December 31, 1977 | Pistols | 702.02 |
| | Total for the year | $12,405.74 |

| Quarter Ending | Item Sold | Additional Assessment |
|---|---|---|
| March 31, 1978 | Firearms | $ 973.44 |
| | Pistols | 997.92 |
| June 30, 1978 | Firearms | 1,464.84 |
| | Pistols | 364.32 |
| September 30, 1978 | Firearms | 1,104.48 |
| | Pistols | 96.80 |
| December 31, 1978 | Firearms | 4,506.84 |
| | Pistols | 190.08 |
| | Total for the year | $ 9,698.72 |
| | TOTAL | $44,038.58 |

23. For each of the quarters ended March 31, 197[6] through December 31, 1978, plaintiff paid the assessed excise tax and timely filed claims for refund raising the sole ground of "the taxability of the Lyman rifle sight and compensator." Plaintiff contended that the "compensator and Lyman sight are firearm parts and/or accessories and, therefore, their sale, as described above, is not subject to tax under Section 4181 of the Internal Revenue Code." In describing the sales at issue, plaintiff stated:

"The gun is offered for sale in two versions. The first version is the standard model * * * A deluxe model of the gun is also offered for sale * * * When a deluxe model is sold the Lyman sight and compensator are billed separately as accessories."

24. Plaintiff's motion for partial summary judgment seeks a determination "that adjustable rear sights and compensators sold with plaintiff's model 1927 A–1 Thompson carbines were 'Accessories of Firearms' and not subject to the imposition of an excise tax under the Tax Code."

25. Plaintiff seeks a refund of excise taxes paid only on the difference in value between the standard front and rear sights (on which plaintiff had not sought a refund) and the added value of the adjustable rear sight and the front sight/compensator unit.

26. Plaintiff has been assessed additional interest of $16.84 and a failure to pay penalty of $9.15 for the second quarter of 1978 and has been given a notice of demand and payment. Plaintiff has not paid these assessed amounts, totaling $25.99.

## DISPOSITION

The Internal Revenue Code of 1954 (IRC) imposes an excise tax of 11 percent on the sale by a manufacturer, producer, or importer of firearms, other than pistols or revolvers. 26 U.S.C. § 4181 (1982). For purposes of this tax, the applicable Treasury Regulation (26 C.F.R. § 48.4181–2(c)) defines a firearm as follows:

(c) *Firearms.* The term "firearms" means any portable weapons, such as rifles, carbines, machine guns, shotguns, or fowling pieces, from which a shot, bullet, or other projectile may be discharged by an explosive.

This definition specifies two attributes: portability and projectile discharge capability.

Parts or accessories of firearms are not taxed under IRC § 4181 when sold separately or for use as spare parts or accessories when sold with a "complete" firearm. The regulation, 26 C.F.R. § 48.4181–1(a)(2), distinguishes sales of "complete" firearms from such nontaxable sales, as follows:

(2) *Parts or accessories.* No tax is imposed by section 4181 on the sale of parts or accessories of firearms, pistols, revolvers, shells, and cartridges when sold separately, or when sold with a complete firearm. Thus, no tax attaches to the sale of telescopic mounts, rubber recoil pads, rifle sights, and similar parts for firearms when sold separately, or when sold with complete firearms for use as spare parts or accessories. The tax does attach, however, to sales of complete firearms, pistols, revolvers, shells, and cartridges, or to sales of such articles which, although in a knockdown condition, are complete as to all component parts.

Plaintiff contends the compensator/front sight combination and the Lyman adjustable rear sight are tax exempt accessories because they are readily removable, merely enhance the utility or appearance, and are not required to enable the carbine to discharge a bullet or projectile by an explosive. The term "firearms" in the regulation, according to plaintiff, includes only those items in a weapon that enable it to shoot a bullet. Thus, according to plaintiff, the components of a complete firearm are limited to the barrel, the receiver, the frame, and the firing mechanisms, including trigger, bolt, firing pin, and the like.

Under plaintiff's concept of a complete weapon, the standard front sight and the standard rear sight would be accessories because they are not required to enable the carbines to discharge a bullet. Plaintiff, however, paid the excise tax on these on the Standard Model 1927 A–1. The refund plaintiff seeks applies to taxes assessed on the net added value of the two specified items on the Deluxe Model 1927 A–1. Plaintiff points out it adopted the practice of always paying the tax on the front and rear sights on its Standard Model, even though such items were not shipped when a customer ordered the Deluxe Model.

Plaintiff misreads the regulations. The regulations do not limit the component parts of a firearm only to those parts that are necessary to the discharge of a bullet by means of an explosive. Treasury Reg. § 48.4181–2(c) is drafted in general terms so as to include all portable weapons that are not pistols or revolvers from which a bullet or projectile can be discharged by an explosive. The regulation does not expressly, or by implication, provide that a firearm subject to the tax consists only of those parts which relate to the capability to discharge a projectile.

Plaintiff's restriction of the meaning of components of a firearm to those items required for the discharge of a bullet enlarges the concept of exempt parts and accessories beyond the definition provided in Treasury Regulation § 48.4181–1(a)(2). Plaintiff includes as an accessory any added item which merely enhances the utility or appearance of a firearm and is readily removable. This expanded concept of the term accessory does not give meaning to the third sentence in the regulation that imposes the tax on all component parts of a complete firearm. Nor does it give meaning to the phrase "for use as" in the second sentence, which continues the tax exemp-

tion for such items when they are sold with complete firearms.

Treasury Reg. § 48.4181–1(a)(2) provides that the tax does not apply to the sale of a part or accessory, either when the sale is made separately, or is made with the sale of a complete firearm. Items which are component parts or accessories, however, when included in a complete firearm, even when in a knockdown condition, are taxable. The regulation does not provide that, when a complete firearm is in a knockdown condition or disassembled, only those items that relate to the discharge of a projectile by means of an explosive are to be taxed.

Plaintiff's carbines were designed to resemble the 1921 and 1928 models of the Thompson submachine gun. The adjustable rear sight and the compensator front sight units deliberately were included in the Deluxe Model 1927 A–1 to facilitate the resemblance to the Thompson submachine gun. Those items are necessary to promote the appearance that the carbine included copies of the components that made up the original Thompson submachine gun. The Deluxe Model 1927 A–1 carbine, from a commercial standpoint, would not be a complete firearm without these items. It follows, they are component parts of a complete firearm within the meaning of Treasury Reg. § 48.4181–1(a)(2).

The sights of a firearm are included in the price of a complete firearm in computing the excise tax. On plaintiff's Deluxe Model 1927 A–1, the compensator and front sight are one unit. The blade front sight slides into a slot in the compensator, which then is screwed onto the barrel. To attach the blade front sight, a compensator is necessary. When the Deluxe Model was ordered, the compensator front sight unit was installed at the factory. There is no basis for separating the compensator from the complete weapon sold as a Deluxe Model 1927 A–1.

The taxation scheme provided in the statute and the regulations does not exclude the sights of a weapon from the definition of a firearm. The tax applies in the situation where a taxpayer purchases a new or used barrel or action, installs a sight and a stock, and then sells the complete firearm. It also applies when the taxpayer sells the barrel and action to a customer, and then furnishes and installs for the customer a sight and a stock. It does not apply when the taxpayer purchases a complete new or used firearm, installs a telescopic sight, and sells the firearm. Rev.Rul. 58–586, 1958–2 C.B. 806, Situations 1, 4 and 5. See also Rev.Rul. 64–602, 1964–2 C.B. 431, and Rev.Rul. 69–325, 1969–1 C.B. 284.

The definition of "firearms" in Treasury Reg. § 48.4181–1(a)(2) was promulgated in 1960, and is virtually identical to the definition set forth in the 1935 regulation. Accordingly, the definition of "firearms" in the Treasury Regulations has remained with no significant change since 1935. Service Armament Co. v. United States, 567 F.2d 377, 381 (Ct.Cl.1977), cert. denied, 436 U.S. 917, 98 S.Ct. 2262, 56 L.Ed.2d 758 (1978). The Internal Revenue Service has imposed excise taxes on rifle sights installed by the manufacturer as part of the complete firearm for a period of over 25 years. Although revenue rulings are not binding in this court, this long standing, consistent administrative interpretation is entitled to considerable weight. In the absence of a persuasive showing of error, it should not be disregarded. Plaintiff's contentions clearly are contrary to past administrative practice. The facts and argument in this case do not establish that the administrative interpretation is unreasonable or unauthorized.

The statutory language, the relevant Treasury Regulations, and the IRS administrative practice confirm that the sights of a portable weapon capable of discharging a bullet by means of an explosive are not excluded from the definition of a firearm. Accordingly, the value of the Lyman rear sight and the compensator/front sight may not be deducted from the price of the Deluxe Model in computing the excise tax on that carbine.

For the foregoing reasons, plaintiff's motion for partial summary judgment is DENIED, and defendant's cross-motion for

summary judgment is ALLOWED. The Clerk shall dismiss the complaint and enter judgment on defendant's counterclaim in the amount of $25.99, plus interest thereon as required by law. Defendant shall have its costs.