RE, Chief Judge.
Plaintiff, Auto-Ordnance Corp., a manufacturer of. semi-automatic carbines, sued to recover excise taxes assessed pursuant to 26 U.S.C. § 4181 on the “added value” of adjustable rear sights and front sight and compensator units sold with certain carbines that it manufactured. Auto-Ordnance appeals from an order of the United States Claims Court, which granted the defendant’s motion for summary judgment and dismissed its complaint.
The questions presented on this appeal are whether the Claims Court erred in finding that the adjustable rear sights and front sight and compensator units, manufactured and sold with the Auto-Ordnance carbines, were component parts of a complete firearm and subject to the excise tax imposed by 26 U.S.C. § 4181, or whether the sights and compensators were tax-exempt “accessories” of firearms. This is a question of first impression for this Court.
Since we hold that the adjustable rear sights and front sight and compensator units are “accessories,” they are exempt from the tax imposed on their “added value” pursuant to 26 C.F.R. § 48.4181-l(a)(2) (1986). Accordingly, the judgment of the Claims Court is reversed.
The Auto-Ordnance carbines were sold with two types of rear sights: (1) a plain, nonadjustable rear sight, and (2) a deluxe, adjustable rear sight. The carbines were also offered for sale with or without a front sight and compensator unit. In essence, Auto-Ordnance maintains that the applicable statute, 26 U.S.C. § 4181, and the pertinent treasury regulation, 26 C.F.R. § 48.4181-1, impose a manufacturer’s excise tax on firearms, but specifically exempt “accessories of firearms.” 26 C.F.R. § 48.4181-l(a)(2). Auto-Ordnance contends that the sights and compensators are clearly accessories because the articles or units are readily removable, merely enhance the utility or appearance of the gun, and are not required to enable the carbine to fire a bullet.
The defendant maintains that the adjustable rear sights, and the front sight and compensator units, are component parts of the carbines, and, therefore, are subject to the excise tax imposed pursuant to 26 U.S.C. § 4181 and 26 C.F.R. § 48.4181-1. The defendant asserts that the items are component parts of the firearm because the deluxe carbine, with the adjustable rear sight and front-sight compensator unit attached, was marketed and sold as a “discrete” model. Also, defendant reasons that the items in this case “serve a major, and not a secondary, purpose in that they enable the ‘Deluxe Model’ carbine to resemble more closely the original Thompson gun.” Moreover, defendant contends that the Treasury Regulations do not state that the component parts of a firearm are limited to those parts that are necessary to fire a bullet.
*1568 Background
The parties submitted the case to the United States Claims Court on the following stipulated facts. Auto-Ordnance manufactured and sold two models of semi-automatic carbines. These carbines, one a “standard” model and the other a “deluxe” model, were patterned after the Thompson submachine gun. The models were offered for sale with two types of rear sights: a plain, nonadjustable sight, and a Lyman-type adjustable sight. The carbines are designed to accept either the standard rear sight or the adjustable rear sight, and, in about 5 minutes, using standard tools, each can be exchanged for the other.
The carbines were also offered for sale with a plain front sight, or a “front sight and compensator” unit. The front sight and compensator of the deluxe model are two pieces specially designed to be fitted together. A compensator is a tube-like device which is screwed onto the muzzle. It contains holes to vent gases, and “could have an effect on muzzle rise” or recoil of the firearm to which it is attached. There was no proof, however, that, other than appearance, the compensator sold by Auto-Ordnance had any actual effect on the carbines. Using standard tools, the standard front sight can be exchanged for the compensator unit in about 20 minutes.
It was also stipulated that the front sight enabled an average marksman to aim the carbine more accurately than without the front sight, and that the combination of the front and rear sight enabled an average marksman to aim more accurately than with no sight or one sight. The record does not indicate whether the adjustable rear sight would enable a person to aim more accurately than when using a plain rear sight. The carbines can be fired and used without any sights.
Auto-Ordnance paid an excise tax on the value of the standard version of the front and rear sights on all carbines that it sold from January 1, 1976 through December 31,1978. Upon reviewing Auto-Ordnance’s tax returns, the Internal Revenue Service (IRS) assessed an additional tax in the amount of $44,038.58,[1] plus interest, on the “added value” of the adjustable rear sights and the front sight and compensator units of the deluxe model carbines.
After paying this additional tax, Auto-Ordnance filed a claim for a refund with the IRS, contending that the sights and compensators were “accessories” to firearms. Plaintiff sought a refund for the tax imposed on the difference in value of the standard sights and the adjustable sights and compensators. Upon rejection of its claim by the IRS, Auto-Ordnance filed suit in the United States Claims Court.
In dismissing Auto-Ordnance’s complaint, the Claims Court held that the “statutory language, the relevant Treasury Regulations, and the IRS administrative practice confirm that the sights of a portable weapon capable of discharging a bullet by means of an explosive are not excluded from the definition of a firearm.” Auto-Ordnance Corp. v. United States, 10 Cl.Ct. 281, 286 (1986). In interpreting treasury regulation 48.4181-1(a)(2), the Claims Court stated: “Items which are component parts or accessories ... when included in a complete firearm, even when in a knockdown condition, are taxable.” The Claims Court also concluded that the items “were necessary to promote the appearance that the carbine included copies of the components that made up the original Thompson submachine gun,” and that “the Deluxe Model could not be a complete firearm without the items at issue.” Id. at 286.
Discussion
Section 4181 of the Internal Revenue Code imposes a tax of 11 percent “upon the sale by the manufacturer, producer, or importer" of firearms, other than pistols and revolvers. 26 U.S.C. § 4181 (1982). The applicable treasury regulation defines firearms as “any portable weapons, such as rifles, carbines, machine guns, shotguns, or fowling pieces, from which a shot, bullet, *1569 or other projectile may be discharged by an explosive.” 26 C.F.R. § 48.4181-2(c). Regulation 48.4181-1(a)(2), however, specifically exempts from taxation “parts or accessories of firearms.” Another regulation provides that “[wjhere a taxable article and a nontaxable article are sold by the manufacturer as a unit, the tax attaches to that portion of the manufacturer’s sale price of the unit which is properly allocable to the taxable article.” Id. § 48.4216(a)-1(e).
The questions presented in this case pertain to the meaning of the term “accessory” as used in the regulations, and whether the “deluxe” items of the Auto-Ordnance carbine are accessories under this definition. The parties agree that the question is one of “classification,” that is, whether the articles are “accessories” or component parts of firearms. If the added items are accessories, the existing regulations exempt them from tax, even if the accessories are sold with a complete firearm. 26 C.F.R. § 48.4181-l(a)(2).
Regulation 48.4181-l(a)(2) provides:
(2) Parts or accessories. No tax is imposed by section 4181 on the sale of parts or accessories of firearms, pistols, revolvers, shells, and cartridges when sold separately, or when sold with a complete firearm. Thus, no tax attaches to the sale of telescopic mounts, rubber recoil pads, rifle sights, and similar parts for firearms when sold separately, or when sold with complete firearms for use as spare parts or accessories. The tax does attach, however, to sale of complete firearms, pistols, revolvers, shells, and cartridges, or to sale of such articles which, although in a knockdown condition, are complete as to all component parts.
26 C.F.R. § 48.4181-1(a)(2) (1986) (emphasis added).
The plain language of section 4181, and the first sentence of the regulation, would seem to resolve the questions presented. The statute imposes a tax on firearms, and the regulation expressly states that “[n]o tax is imposed by section 4181 on the sale of parts or accessories of firearms ... when sold with a complete firearm.” 26 C.F.R. § 48.4181-l(a)(2). It may be noted that the Claims Court was in error when it stated that “[ijtems which are component parts or accessories ... when included with a complete firearm ... are taxable.” 10 Cl.Ct. 281, 286 (1986).
The Claims Court was in error because the pertinent regulations make clear that, if the added items are accessories, they are exempt from tax. The Claims Court was also in error when it determined that “the Deluxe Model could not be a complete firearm without the items in issue.” This statement would seem to inject or introduce into the existing regulations a concept of “commercial completeness.” The existing regulations, however, do not speak of “commercial completeness.” Under the present regulations the question is whether the added items were component parts of a firearm or accessories to a firearm. For the defendant to maintain that the carbines are not complete firearms without the adjustable rear sights and front sight and compensator units is inaccurate because it is clear that they are added solely for the purpose of appearance. Hence, if accessories are added to a complete firearm, they are exempt from tax. The question, therefore, is whether the adjustable rear sights and front sight and compensator units are accessories.
The term “accessory,” however, is not defined in either the statute or the treasury regulations. Plaintiff urges that the term be interpreted and applied as it is commonly defined in standard lexicographic sources. Defendant makes no attempt to define the word “accessory.”
Since the regulations neither specify what are the component parts of a complete firearm, nor define the term “accessory,” it is appropriate for the Court to look beyond the language of the regulation in order to ascertain the meaning of the term “accessories.” E.g., United States v. C.F. Liebert, 59 C.C.P.A. 43, 45 n. 5, 450 F.2d 1405, 1406 n. 5 (1971) (accessory defined by dictionary).
An accessory is commonly defined as “a thing of secondary or subordinate impor-tance____ An object or device that is not *1570 essential in itself but adds to the beauty, convenience or effectiveness of something else.” Webster’s Third New International Dictionary 11 (1981). Another source defines accessory as “equipment, usually demountable and replaceable,” that is added “for convenience, comfort, safety or completeness.” Webster’s New Universal Unabridged Dictionary 11 (2d ed. 1983).
Although not dispositive, the meaning or definition of the terms “parts” and “accessories” has been frequently litigated in tariff or customs classification cases. See, e.g., United States v. C.F. Liebert, 59 C.C.P.A. 43, 450 F.2d 1405 (1971), aff'g 63 Cust.Ct. 357, C.D. 3919, 305 F.Supp. 1400 (1969); Gallagher & Ascher Co. v. United States, 52 C.C.P.A. 11, C.A.D. 849 (1964); Olympus Corp. v. United States, 72 Cust.Ct. 176, C.D. 4538 (1974). In customs classification cases, for an article to be considered a “part,” rather than an accessory, it must be an integral, constituent, or component part, without which the article to which it is to be joined could not function. See, e.g., United States v. Willoughby Camera Stores, Inc., 21 C.C.P.A. 322, T.D. 46851 (1933) (tripods are not component parts of view cameras). “The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other.” Id. at 323.
It also has been held that a device may be a “part” of an article even though its use is optional and the article will function without it, if the device is “dedicated irrevocably for use” with the article, and, once installed, the article cannot be used without it. See Trans Atlantic Co. v. United States, 48 C.C.P.A. 30, 33, C.A.D. 758 (1960); United States v. Pompeo, 43 C.C.P.A. 9, 14, C.A.D. 602 (1955). Certain devices or objects, however, despite their usefulness in conjunction with other articles, retain a separateness of identity and a functional self-sufficiency which precludes their classification as component parts. See, e.g., Schick X-Ray Co. v. United States, 271 F.Supp. 305 (Cust.Ct.1967). More simply stated, “an element which is not essential to the operation of an article for its intended purpose is not part of an article.” United States v. Cody Manufacturing Co., 44 C.C.P.A. 67, 72, C.A.D. 639 (1957).
Plaintiff contends that the sights and compensators are not component parts of the carbine because they are not essential to its functioning as a firearm. It further contends that they are “accessories” to firearms because the items are readily demountable and replaceable, are added for comfort, convenience, or appearance, and are of secondary value. The defendant, however, maintains that the regulations do not state that component parts are only those necessary to fire a bullet, and that the “circumstances of the marketing and manufacture of the carbines clearly demonstrate that the Lyman sight and compensator/front unit are component parts of a complete firearm.”
Whether Auto-Ordnance marketed or advertised the carbines as a “discrete” model with an adjustable rear sight, or a front sight and compensator unit, is not controlling under the existing regulations. Were the court to decide the question presented on the basis of Auto-Ordnance’s advertising or marketing methods, in effect, it would be rewriting the regulations by including the notion of “commercial completeness.” Nor can the court adopt an interpretation which would conflict with a fair reading of the existing regulations, which expressly exempt accessories from tax, even if they are sold with a complete firearm. See 26 C.F.R. § 48.4181-l(a)(2).
The stipulated facts make clear that the items in question are of “secondary or subordinate importance.” For example, although the compensator’s theoretical function is to reduce recoil by venting escaping gases, there is no proof that it actually performs this function. Its addition to the firearm is merely one of appearance, to have the carbine resemble the Thompson submachine gun. Both the adjustable rear sight and the compensator unit can be removed from the carbine for use without sights, or can be exchanged for standard sights. Furthermore, the carbine may be *1571 fired whether or not the sights are attached.
The sights and compensators, when attached to the carbine, do not merge with, or become an integral, constituent, or component part of the carbine. Indeed, it is stipulated that they are readily removable with standard tools, and that the carbine will fire without the sights or compensator. Moreover, even if a sight is attached to the carbine, it does not have to be used by the marksman, since the carbine may be “fired from the hip.”
In this case, although the pertinent regulations do not specify what are the component parts of firearms, a regulation does define the meaning of firearms. Regulation 48.4181-2(c) defines the term firearms as “any portable weapons, such as rifles, carbines, machine guns, shotguns or fowling pieces, from which a shot, bullet, or other projectile may be discharged by an explosive.” 26 C.F.R. § 48.4181-2(c). From this definition, it is clear that a firearm is complete without the items in question, and does not require adjustable rear sights or front sights and compensator units. Consequently, in view of the common meaning of the word accessory, an accessory to a firearm is an item which is of “secondary or subordinate importance” to the function of the firearm.
This determination is further supported by 26 C.F.R. § 48.4181-l(a)(2), which lists as examples of accessories, rifle sights, telescopic mounts, and rubber recoil pads, and similar parts of firearms when sold with complete firearms for use as accessories. Rifle sights are specifically mentioned, and the compensator would seem to be similar to the recoil pads. The doctrine of noscitur a sociis permits the Court to ascertain the meaning of ambiguous terms by reference to the terms with which they are associated in the statute or regulations. See, e.g., Nomura (America) Corp. v. United States, 62 Cust.Ct. 524, 299 F.Supp. 535 (1969), aff'd, 58 C.C.P.A. 82, 435 F.2d 1319 (1971). Any ambiguity as to whether the compensators are accessories, therefore, may be resolved by reference to the specifically named examples of accessories contained in 26 C.F.R. § 48.-4181-1.
The best that can be said for the position of the defendant is that there may be some doubt as to the meaning of the word accessories in the pertinent regulation. Even assuming the existence of doubt, it is established that, in a tax refund case, the doubt should be resolved in favor of the taxpayer. See White v. Aronson, 302 U.S. 16, 20, 58 S.Ct. 95, 97, 82 L.Ed. 20 (1937); see also Farmar v. United States, 689 F.2d 1017, 1020 (Ct.Cl.1982).
Finally, defendant asserts that the decision of the Claims Court is in accord with the “consistent” administrative practice of the IRS. Plaintiff concedes that “where an accessory is affixed in a permanent manner it becomes indistinguishable from the underlying firearm and is, therefore, rendered taxable.” Plaintiff, however, stresses that “[njever has the government issued a revenue ruling that readily removable and replaceable adjustable rear sights or compen-sators were component parts of firearms and taxable.”
The administrative rulings cited by the government do not address the specific issues presented in this case. See, e.g., Rev. Rui. 64-201, 1964-2 C.B. 430 (permanently attached part of a shotgun). The cited rulings do not cover a case in which the sights and compensators are not permanently attached. Hence, the weight to be accorded to the IRS rulings is not presented here because the rulings deal with items that are permanently attached or affixed to the article. If the adjustable sights and front sight and compensator unit were permanently attached, the court would have to address the question of the weight to be accorded the rulings, and whether there was a longstanding or clear administrative practice. The court is not persuaded that to hold the items in question to be accessories would be inconsistent with the administrative practice.
The agreed statement of facts makes clear that both models of carbines are complete without the added items, and are fully functional firearms without them. *1572 Hence, since they are not component parts of the firearms, they are accessories. Since the added items are accessories, they are exempt from tax under the existing regulations.
In view of plaintiffs specific request for relief, the court is not presented with the question as to whether any tax paid on the readily removable standard sights is to be refunded.
Conclusion
It is the holding of the court that the adjustable rear sights and the front sight and compensator units of the Auto-Ordnance carbines are accessories within the meaning óf section 48.4181-l(a)(2), and that the excise tax does not apply to the added value of those parts.
The order of the Claims Court granting the defendant’s motion for summary judgment is reversed, and the case is remanded for a determination of the specific amount to be refunded.
REVERSED and REMANDED.

. This sum included additional excise taxes on the sale of pistols. Auto-Ordnance has not challenged the portion of the additional tax which pertains to the sale of the pistols.