AUTO–ORDNANCE CORP.

v.

The UNITED STATES.

No. 285–84T.

United States Claims Court.

Feb. 9, 1988.

Samuel S. Yasgur, White Plains, N.Y., Atty. of Record, for plaintiff. Morton A. Smith, Marilyn J. Slaatten, and Hall, Dickler, Lawler, Kent & Friedman, of counsel.

Robert W. Metzler, Washington, D.C., with whom was Acting Asst. Atty. Gen., William S. Rose, Jr., for defendant.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge:

This case now comes before the court for a determination of the specific amount to be refunded to plaintiff on manufacturers excise taxes assessed for tax years 1976, 1977 and 1978, pursuant to 26 U.S.C. §§ 4181 and 4216 (1982). The case, which involves a liability issue of first impression, has a protracted history. The complaint was filed on June 4, 1984, for a total refund of $62,336.40 in assessed tax, interest and penalties on the added value of adjustable rear sights and front sight/compensator units sold with certain firearms manufactured and sold by Auto–Ordnance Corporation. The complaint was dismissed on July 2, 1986. *Auto–Ordnance Corp. v. United States*, 10 Cl.Ct. 281 (1986). On plaintiff's appeal, the United States Court of Appeals for the Federal Circuit on June 2, 1987, on

the liability issue, held that the adjustable rear sights and the front sight/compensator units were "accessories" within the meaning of 26 C.F.R. § 48.4181–1(a)(2) (1986) and that the excise tax does not apply to the added value of those parts. The case was remanded for a determination of the specific amount to be refunded. *Auto–Ordnance Corp. v. United States*, 822 F.2d 1566 (Fed.Cir.1987).

On July 27, 1987, counsel were directed to confer and to attempt to stipulate the specific amount to be refunded. On October 9, 1987, in a joint status report, the parties stated they were unable to agree upon the amount plaintiff is entitled to recover, and set forth their respective contentions. On October 16, 1987, further briefing was ordered on the relevant facts and applicable law, and on any infirmities on the previous IRS audit and computations of the assessment. Briefing was completed on February 8, 1988.

Prior to the notice on June 26, 1981, that the case had been closed on the basis proposed by the Albany District Director in the revised 30–day letter, the IRS had conducted a thorough audit of plaintiff's books and records. After this case was filed, the parties undertook and completed discovery on a variety of subjects, including interrogatories, requests for admission, depositions and delivery of documents. Numerous disputes arose during discovery that required resolution by the court. Initial consideration of the parties' motions for summary judgment revealed each party contended that material facts relative to their opponent's motion were in dispute. In order to proceed by summary judgment, counsel were required to file on February 3, 1986, a joint stipulation of all facts material to the disposition of the case. Item 25 of the stipulation provides:

> 25. Plaintiff seeks a refund of excise taxes paid only on the difference in value between the standard front and rear sights (on which plaintiff has not sought a refund) and the added value of the adjustable rear sight and the front sight/compensator unit.

Prior to filing the joint stipulation of facts, defendant had initiated further discovery directed at the "added value" amount, notwithstanding the prior IRS audit. On representation by counsel that the case likely would be settled if the liability issue were to be determined in plaintiff's favor, defendant's further discovery was denied. Although the liability issue has been resolved for plaintiff, the parties have not agreed on the amount plaintiff is entitled to recover. Computation of the amount of the refund should not be complicated, and it does not involve novel issues of first impression.

A large sum of money is not involved and the parties are not far apart in their computations. Plaintiff requests a total award of $62,164.40 plus statutory interest to the date of payment. In the alternative, if certain deductions sought by defendant are ordered, plaintiff would not contest a total award of $51,795, plus statutory interest to the date of payment. Defendant contends that plaintiff is entitled to recover a total award no larger than $34,707.90. Under plaintiff's alternative award, the maximum amount of tax owed is $36,726. Defendant computes the maximum amount of tax owed at $24,744.62, a difference of $11,981.38. Inasmuch as the interest and penalty calculation is largely a mechanical exercise, failure of counsel to agree upon a settlement, in the circumstances is unreasonable.

The excise tax on plaintiff's firearms is computed by applying an 11 percent tax rate to the pertinent selling price. 26 U.S. C. § 4181. Selling price is defined in IRC § 4216; subsection 4216(a) deals with charges for containers, packing and transportation; subsection 4216(b) authorizes the use of a constructive sales price. Plaintiff used a constructive sales price in computing its tax on the units. Defendant points to regulations promulgated under IRC § 4216(a) as having special significance in this case. 26 C.F.R. § 48.4216(a)–1(e), in pertinent part provides:

> (e) Taxable and nontaxable articles sold as a unit.

Where a taxable article and nontaxable article are sold by the manufacturer as a unit, the tax attaches to that portion of the manufacturer's sale price of the unit which is properly allocable to the taxable article. * * * Normally, the taxable portion of such a unit can be determined by applying to the manufacturer's sale price of the unit the ratio which the manufacturer's separate sale price of the taxable article bears to the sum of the sale prices of both the taxable and nontaxable articles, if such articles are sold separately by the manufacturer. Where the articles (or either one of them) are not sold separately by the manufacturer and do not have established sale prices, the taxable portion is to be determined from a comparison of the actual costs of the articles to the manufacturer. Thus, if the cost of the taxable article represents four-fifths of the total cost of the complete unit, the tax applies to four-fifths of the price charged by the manufacturer for the unit.

During the years in issue, plaintiff's excise taxes were computed by the IRS on a total of 7,519 firearms and a total of 1,346 pistols. The number for each of the quarters at issue is as follows:

| Quarter Ending | No. of Pistols | No. of Firearms |
|---|---|---|
| March 31, 1976 | | 1198 |
| June 30, 1976 | | 969 |
| Sept. 30, 1976 | | 620 |
| Dec. 31, 1976 | | 550 |
| March 31, 1977 | | 787 |
| June 30, 1977 | | 952 |
| Sept. 30, 1977 | | 345 |
| Dec. 31, 1977 | 414 | 378 |
| March 31, 1978 | 567 | 208 |
| June 30, 1978 | 202 | 313 |
| Sept. 30, 1978 | 55 | 236 |
| Dec. 31, 1978 | 108 | 963 |
| TOTAL | 1,346 | 7,519 |

The IRS closing notice on June 26, 1981, computed a total of $44,038.58 in additional taxes for the years 1976 through 1978. This amount included $41,687.44 for firearms, and $2,351.14 for pistols. On August 24, 1981, a total of $44,038.58 in tax and $15,080.74 in interest were assessed against plaintiff. Subsequently, a total of $3,075.44 in additional interest and penalties were assessed.

In summary, IRS assessed additional taxes are $44,038.58 and assessed interest and penalties total $18,516.18.

Plaintiff argues that the entire amount of the added tax was attributable only to the added value of the front sight/compensator units and the adjustable rear sights. Plaintiff assumes that no other adjustments were made as a result of the audit. The assessed interest and penalties, similarly, plaintiff asserts result from taxes attributable solely to parts that the Federal Circuit determined were accessories. Plaintiff's final demand for tax, interest and penalties is for a refund that totals $62,164.40.

Plaintiff's analysis is deceptive and erroneous. During the course of this case, plaintiff's allegations as to the amounts involved have been inconsistent. This inconsistency results either from clear error, or from superficial review. The amount of tax assessed on which refund is claimed is variously stated as:

| | | |
|---|---|---|
| Complaint | June 4, 1984 | $44,306.44 |
| Jt. Stip. of Facts | Feb. 3, 1986 | $44,038.58 |
| Jt. Status Report | Oct. 9, 1987 | $41,651.44 |
| Plaintiff's Memorandum | Nov. 16, 1987 | $44,038.53 |

The June 24, 1981, notice to plaintiff on its face shows that the additional tax included $2,351.44 for pistols. Plaintiff's computation for a refund includes the assessment attributable to pistols. Plaintiff points out that Count 1 of the complaint sought a refund of the entire assessment and argues defendant is in error to exclude the pistol amount from the assessment. During the course of this case, plaintiff changed its position on this part of its claim. The Federal Circuit stated that the IRS had assessed an additional tax in the amount of $44,038.58 on the "added value" of the items in issue, that this sum included additional excise taxes on the sale of pistols, and noted that "Auto–Ordnance has not challenged the portion of the additional tax which pertains to the sale of the pistols." 822 F.2d at 1568.

Plaintiff's final brief asserts it has paid $18,155 in assessed interest and penalties, and that all such assessments are fully paid. The February 3, 1986, joint stipulation of facts, item No. 26 states:

26. Plaintiff has been assessed additional interest of $16.84 and a failure to pay penalty of $9.15 for the second quarter of 1978 and has been given a notice of demand and payment. Plaintiff has not paid these assessed amounts, totaling $25.99.

In addition to a deduction from the additional tax attributable to sales of pistols, defendant shows that the increase in tax proposed in the June 26, 1981, closing notice involved matters other than the added value of the parts in dispute. In the audit, the IRS agent found that an increase in tax was necessary because plaintiff failed to include kits in its tax base. This resulted in a tax increase of $671.82 for the quarters 1 through 3 of 1977. The agent also found that plaintiff through a computational error had underreported by $1.99 per unit the sale in 1976 of 3,337 firearms. The tax increase attributable to this error totals $6,640.63. These items were a part of the additional tax assessed pursuant to the June 26, 1981, closing notice.

■ In its computation of the amount of tax plaintiff is entitled to recover, defendant subtracted from the assessed tax an additional sum to correct for an alleged discount manipulation. This element of the assessed tax was not specifically identified by the IRS agent in the 1979 audit, but defendant now suggests that the agent's finding that plaintiff improperly reduced the base price of the firearms is broad enough to include an amount based upon the new discount computation. In essence, defendant contends that discounts on the taxable portion of the unit (the carbine) were 21.6 percent of the list price, that discounts on nontaxable extras (front sight/compensator and rear sight) were 10 percent, and that discounting the firearm greater than the accessories shifts more of the price of the unit into the nontaxable portion and thus reduced the tax. In 1977 and 1978 plaintiff changed the constructive price for its firearms but did not reduce the portion of the price allocated to the accessories. Defendant contends there is no apparent reason other than tax avoidance for plaintiff's discounting practice. Defendant

does not assert the discount computation element as an offset. It is merely suggested as an illustration of plaintiff's failure to establish the correct amount of tax. Defendant did not raise this contention in its answer and counterclaim, and it was not raised by the IRS agent. Defendant's contention, that plaintiff has not established that it is entitled to recover any amount, is not persuasive.

In summary, the elements of defendant's calculation of the amount of tax that plaintiff is entitled to recover are:

| $ | 44,038.58 | Total audit tax assessment |
|---|---|---|
| — | 2,351.14 | (1) pistols |
| — | 671.82 | (2) kits |
| — | 6,640.63 | (3) audit correction of plaintiff's use of wrong tax per unit in 1976. |
| — | 9,630.37 | (4) correction of discount manipulation |
| $ | 24,744.62 | Maximum amount of tax that plaintiff can recover |

■ The assessed tax of $44,038.58 should be adjusted by deductions attributable to (1) pistols, (2) kits, and (3) the computational error. No correction should be made for the alleged discount manipulation. With these adjustments, the corrected additional tax and the maximum amount of tax to be refunded is $34,374.99. In the interest of bringing this case to a close by entry of final judgment without further delay for briefing of a quarterly calculation of interest and penalties to be recovered, the summary method of calculation suggested by plaintiff is applied here. The proportion of the adjusted added tax that is attributable solely to the accessories to the tax assessed on August 24, 1981, is 78 percent. The total interest and penalties assessed against plaintiff, less $25.99 stipulated as unpaid, is $18,490.19. The proportion of interest and penalties attributable to imposition of tax on accessories is deemed to be 78 percent, and the amount of interest and penalties to be refunded is $14,422.35. The total amount to be refunded, accordingly, is $48,797.34.

Plaintiff asserts it is entitled to an award of attorney fees under IRC § 7430, 26 U.S. C. § 7430 (1982), and requests the imposition of sanctions under RUSCC 11. This

case has been hard fought by counsel for each party. The aura of acrimony that has developed probably accounts for the failure to reach a stipulated settlement of the amount of plaintiff's refund. Excise taxes are a field of law in which a "green eyeshade" mentality can develop that on occasion obscures professional objectivity.

At the agency level, plaintiff has been treated shabbily. After receipt of the June 26, 1981, closing notice and the August 24, 1981, assessment, plaintiff paid the tax and interest due for the quarter ended June 30, 1978. By letters dated September 10, October 21 and November 2, 1981, plaintiff's counsel submitted a claim for refund, requested expedited treatment so that legal action could be commenced in court, and requested that collection procedures for the other quarters be suspended or held in abeyance until a judicial ruling was obtained. On November 4, 1981, IRS personnel dealing with plaintiff's claim submitted a Request for Technical Determination (ANSC Form 3–5899(11–80)) that stated:

> T/P wants to pay one quarter tax in full so that he can go to court and fight all quarters 7603 through 7812. He claims this can be done because it is done on F9Y1's claim for wrong period. Before I contact T/P again, can this be done?

In the Determination section of the form, the Classification Section replied on November 6, 1981, stating in part:

> The rule that *full payment* of an income tax assessment must precede a suit for refund of any part of that assessment is *not* applicable to excise taxes ... See attached.

Attached was a portion of paragraph 2246 of the U.S. Excise Tax Guide that states, in part:

> In order for a taxpayer to sue for a refund of excise taxes, it is not necessary that the full amount of taxes assessed by the Commissioner be paid. The Courts hold that excise taxes are imposed on separate and distinct transactions (e.g., a single sale of a truck, the single payment of an airplane ticket, etc.). The tax on any such transaction may be recovered by way of a suit for refund (assuming a claim for refund has previously been filed) even though the Commissioner has assessed taxes on a large group of such transactions. This means that the taxpayer may contest the validity of the taxes assessed on a large number of separate transactions by simply paying the tax due on a single transaction and claiming and suing for a refund. The Commissioner can always resort to a jeopardy assessment.

Notwithstanding the determination by the Classification section and this advice, the IRS insisted that plaintiff pay the entire amount for all 12 tax quarters, plus interest and penalties. Plaintiff points out that if the IRS had applied this procedure in 1981, plaintiff would have been able to retain and collect interest on approximately $60,000, during the period the liability issue was litigated. The costs of maintaining this proceeding over almost a decade probably have exceeded any potential recovery. In summary, plaintiff complains:

> A taxpayer, having a legitimate issue, has spent almost eight years attempting to get monies unlawfully charged. The Circuit Court has held that the imposition of the tax was unlawful. Yet the money is not returned. Rather the government's representatives submit documents in violation of the rules, make motions in violation of the rules, raise non-issues they cannot support and demand one sided discovery. Is this how government sets the tone for proper litigation? Is this how the people's business is done, by harassing a wronged taxpayer from whom over $60,000 was unlawfully exacted? Is it Defendant's purpose to punish the taxpayer for having had the temerity to pursue its rights? Has Defendant forgotten that, in this case, it was the Defendant, not the taxpayer, who acted unlawfully?

■ Plaintiff's request for attorney fees does not address the criteria mandated in IRC § 7430. Nor does plaintiff provide the analysis of facts and reference to precedent, or any supporting documentation as to hours and rates, that is essential for an

informed decision as to an award of attorney fees. One of the criteria required by Section 7430 is that to be a "prevailing party" that party must establish that the position of the United States in the civil proceeding was unreasonable. In this case, at the very least, the liability issue was a close question. It was also a question of first impression. At the trial court level, defendant's position was upheld, and on appeal one member of the three judge panel dissented from the decision in favor of plaintiff's position. In these circumstances, defendant's position, at the litigation level clearly was reasonable. *See Gavette v. OPM,* 808 F.2d 1456, 1465–68 (Fed. Cir.1986) (standards under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)) and H.R.Rep. No. 97–404, 97th Cong., 1st Sess. at 15 and Senate Committee on Finance, Technical Explanation of Committee Amendment, 127 Cong.Rec. 32070, at 32078 (when taxpayer loses in the trial court and obtains a reversal of the decision in the appellate court, the appellate court would not normally award attorney's fees to the taxpayer since the trial court, by definition, had found the government's position to be reasonable.)

At the agency level, on the question of applicability of excise tax to the accessories in issue, the IRS position also was reasonable. As to the IRS collection effort, although unnecessarily harsh, the requirement that plaintiff pay the entire amount assessed was within the scope of the Commissioner's discretion. Until the IRS position was overturned in litigation, plaintiff was obligated to pay all of the tax, interest and penalties that had been assessed.

■ Plaintiff's application for sanctions lacks merit. RUSCC 11 applies to conduct of counsel in litigation. Sanctions are permissible to punish the filing of papers for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Plaintiff has not established any such incident in defendant's conduct in this case, and plaintiff's general charges are not supported by the record, as a whole.

## CONCLUSION

On the basis of the foregoing, defendant's motion for limitation of the amount of judgment is allowed in part and denied in part, and defendant's motion for additional discovery is denied. Plaintiff's motion for an award of attorney fees pursuant to 26 U.S.C. § 7430 and for the imposition of sanctions pursuant to RUSCC 11 is denied. The Clerk is directed to enter judgment for plaintiff in total amount of $48,797.34, plus statutory interest to the date of payment. Plaintiff may recover its costs.