**DAVID W. SHENK & CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 97–33.**
**Court No. 93–08–00434.**

United States Court of
International Trade.

March 19, 1997.

Peter S. Herrick, Miami, FL, for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney in Charge, International Trade Field Office; John J. Mahon, Civil Division, Dept. of Justice, Commercial Litigation Branch; Mark G. Nackman, Office of Assistant Chief Counsel, U.S. Customs Service, of counsel, for the Defendant.

## OPINION

POGUE, Judge.

This case is before the court on motions for summary judgment. Plaintiff, David W. Shenk & Co., challenges the decision of the United States Customs Service ("Customs") denying the plaintiff's protest against Customs' classification of the subject merchandise. The court has jurisdiction pursuant to 28 U.S.C. § 1581(a)(1988).

Plaintiff, David W. Shenk & Co., ("Shenk") is the importer of record of certain acoustic couplers and parts of acoustic couplers from Japan. Upon importation, Customs classified the merchandise under subheadings 8517.82.00, 8517.90.55, 8517.90.60, HTSUS, which provide as follows:

| 8517. | Electrical apparatus for line telephony or telegraphy, including such apparatus for carrier-current line systems; parts thereof: | |
|---|---|---|
| | Other apparatus: | |
| 8517.82.00 | Telegraphic . . . . . . . . . . . . . . . | 4.7% |
| 8517.90 | Parts: | |
| | Of telegraphic apparatus: | |
| 8517.90.55 | Of articles of subheading 8517.40.10 . . . . . . . . . . . . . . | 4.7% |
| 8517.90.60 | Of telegraphic switching apparatus . . . . . . . . . . . . . . | 4.7% |

The plaintiff claims that the merchandise should have been classified under subheading 8471.99.15, as control or adapter units for automatic data-processing machines, or, alternatively, under 8473.30.40, as parts and accessories of machines of Heading 8471, not incorporating a cathode ray tube; in other words, parts or accessories of automatic data-processing machines or units:

| 8471. | Automatic data-processing machines and units thereof; magnetic optical readers, machines for transcribing data onto data media in coded form and machines for processing such data, not elsewhere specified or included: | |
|---|---|---|
| | Other: | |
| | Other: | |
| 8471.99.15 | Control or adapter units . . | Free |
| 8473. | Parts and accessories (other than covers, carrying cases and the like) suitable for use solely or principally with machines of headings 8469 to 8472: | |
| | Parts and accessories of machines of heading 8471: | |
| 8473.30.40 | Not incorporating a cathode ray tube . . . . . . . . . . | Free |

## UNDISPUTED FACTS

The acoustic couplers are telecommunication devices used for connecting computer

modems to telephone handsets. They allow the transmission of data over public telephone lines between two points when no direct connection can be made. They are attached to a telephone handset and held in place by a hook-and-loop strap. They have a telephone-type cord which is connected to a modem, which, in turn, is connected to the central processing unit of a computer.

The telecouplers' principal function is to connect telephone handsets to computer modems when no modular jacks are available. They eliminate communication problems posed by RJ–11 jacks, digital phone systems, and foreign telephones.

The telecouplers use sending and receiving elements for modem communications and convert electronic analog (audio) signals into acoustic tone signals and vice versa. They can work with both analog and digital phone systems.

## STANDARD OF REVIEW

■ The ultimate issue as to whether imported merchandise has been classified under the correct tariff provision entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise in question comes within the description of such terms as properly construed. *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (1994). The first step is a question of law; the second, a question of fact. *EM. Chem. v. United States*, 9 Fed. Cir. (T) 33, 35, 920 F.2d 910, 912 (1990).

Rule 56 of this Court permits summary judgment when "there is no *genuine* issue as to any *material* fact ..." USCIT R. 56(d) (emphasis added); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed.Cir.1987). Similarly, Rule 56 of this Court specifically requires that the Court determine "what material facts are actually and in good faith controverted." USCIT Rule 56(e).

■ On the question of genuineness, the standard for determining whether there is *a genuine* issue of fact mirrors the standard for a directed verdict which requires the trial judge to direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." 477 U.S. at 255, 106 S.Ct. at 2514; *see Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562–63 (Fed.Cir.1987); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (Rule 56 "mandates the entry of summary judgment ..., against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Since there are no genuine issues of material fact to be resolved by a trial, the legal questions are ripe for determination by this Court. Accordingly, summary judgment is appropriate.

## DISCUSSION

■ The Chapter Notes to Section 85 do not offer specific guidance on its scope. However, the Explanatory Note [1] to this section states in pertinent part:

[t]he term 'electrical apparatus for line telephony or line telegraphy' means apparatus for the transmission between two points of speech or other sounds (or symbols representing written messages, images or other data), by variation of an electric current or of an optical wave flowing in a metallic or dielectric (copper, optical fibers, combination cable, etc.) circuit connecting the transmitting station to the receiving station ... The heading covers all such electrical apparatus designed for this purpose, including the special apparatus used for carrier-current line systems.

The same Note also addresses telegraphic apparatus, stating that it "is essentially designed for converting texts or images into

1. The Explanatory Notes to the HTSUS are not dispositive, but they are "generally indicative of the scope of the HTSUS." *See, Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed.Cir.1992).

appropriate electrical impulses, for transmitting those impulses, and at the receiving end, receiving these impulses and converting them either into conventional symbols or indications representing the text, or into the text of the image itself."

■ The telecouplers convert signals from computer modems to acoustic tone signals that can be accepted by telephone handsets and transmitted over telephone lines to another point. The telecouplers transmit data between two computer systems by connecting the transmitting station to the receiving station and, therefore, meet the requirements of an "electrical apparatus" in Heading 8517. They also assist computer modems, classified under subheading 8517.40.10, HTSUS, in performing their communication functions.

For the separately entered merchandise to be classified under the subheadings for automatic data-processing machines, the merchandise must satisfy the two-prong test found in Note 5(B) of Chapter 84 setting forth the criteria for classification as a unit of a data-processing machine, or meet the definition of a part or accessory "suitable for use solely or principally with an automatic data processing (ADP) machine." 8473.30 HTSUS.

Note 5(B) states:

Automatic data processing machines may be in the form of a variable number of separately housed units. A unit is to be regarded as being a part of the complete system if it meets all the following conditions: (a) it is connectable to the central processing unit either directly or through one or more other units; and (b) it is specifically designed as part of such a system (it must, in particular, unless it is a power supply unit, be able to accept or deliver data in form (code or signals) which can be used by the system).

Note 5(B), Chapter 84, HTSUS. Additionally, Note 5(B) excludes from the scope of Chapter 84 "machines incorporating or *working in conjunction* with automatic data-processing machines and *performing a specific function.* Such machines are classified in the headings appropriate to their *respective*

*functions* or failing that, in residual headings." *Id.* (emphasis added). Thus, the question before the Court is whether the couplers are designed as part of automatic data-processing systems, or work in conjunction with such systems to perform some specific function.

If the imported acoustic telecouplers perform specific telegraphic functions so that they work in conjunction, rather than as part of an ADP system, they would be excluded from heading 8471 by operation of Chapter Note 5(B), and Customs' classification would stand. If, on the other hand, the acoustic telecouplers function as part of an ADP system, as adapter units,[2] they should be classified under heading 8471.

"Adapter" is not specifically defined in the HTSUS. However, the NEW WEBSTER COMPUTER DICTIONARY 4 (1984) defines an adapter as "a connecting device that enables different parts of one or more systems or subsystems to interact with each other."

■ The defendant maintains that the telecouplers cannot be units of an automatic data-processing machine because they are connected to computers through modems, and, defendant says, modems are not units. By separately classifying modems, defendant claims, Congress must have intended to exclude them from the definition of units. According to defendant therefore, the couplers cannot satisfy the first prong of Chapter Note 5(B)'s two-part test. The Court is not persuaded by this argument. After all, a modem could satisfy both prongs of the statutory test for a unit. It is connected to a central processing unit either directly or through one or more other units, and it can be designed as a part of an automatic data-processing machine system.

Nevertheless, assuming a modem could be a unit, and assuming further that the couplers are specifically designed for use with automatic data-processing machines, the exclusionary language of Note 5(B) precludes classification of the telecouplers under heading 8471. The parties agree that the telecouplers perform certain telegraphic functions

2. *See* 8471.99.15 HTSUS

providing interconnection between telephone handsets and computer modems when no modular jacks are available. Heading 8517 covers telegraphic functions. The exclusionary language of Note 5(B) states that "machines *working in conjunction* with automatic data-processing machines and performing a *specific function* . . . are classified in the headings appropriate to their *respective functions.*" (emphasis added). The telecouplers work in conjunction with a modem performing telegraphic functions; therefore, they are properly classified under Heading 8517.

To prevail on its claim, plaintiff would have had to produce evidence that the telecouplers perform data processing functions, making them an integral component, or part, of a data processing machine. In the summary judgment context, plaintiff's statements that, "The telecoupler is designed to serve ADP machines not to serve telephone systems," and that, "The principal and essential function of the telecoupler is to interconnect computers," (Pl.'s Pre–Trial Summ. Mem. of Law and Mot. for Summ. J. at 8) are unsupported conclusory allegations and do not create genuine issues of material fact.

The only evidence the Court has before it on the telecouplers' function is the undisputed fact that "[t]he principal function of the telecoupler is to provide interconnection between a telephone handset and a computer modem." (Undisputed Facts ¶ 11). It is equally undisputed that the couplers enhance the effectiveness of a modem by eliminating "the problems with RJ–11 jacks, digital phone systems and foreign telephones. . . ." (Undisputed Facts ¶ 10). Therefore, although the couplers would appear to fit the broad definition of an adapter, they are more accurately described as accessories to mo-

dems.[3] There is of course no provision for accessories of modems, but there is a residual provision within the heading containing modems. In accordance with the language of Note 5(B) of Chapter 84, the telecoupler must be classified in a residual heading appropriate to its *respective function* as an accessory to a modem. That heading is 8517.82.00.

■ Plaintiff also argues, in the alternative, that the telecouplers are properly classifiable as "parts and accessories" to automatic data-processing machines, and thus fall under 8473.30.40 HTSUS. However, plaintiff has failed to make a case that the telecouplers assist computers in their data-processing function more than they assist modems in their telegraphic function.

■ The genuineness of a disputed question of fact must be judged by the substantive evidentiary standard applicable to the case. *See Henry Mast Greenhouses, Inc. v. United States,* slip op. 95–198 at 8, 1995 WL 731542 (Dec. 4, 1995). In a classification case, Customs' factual conclusions are presumed to be correct, 28 U.S.C. § 2639(a)(1), and the plaintiff has the burden of overcoming that presumption by a preponderance of the evidence. *St. Paul Fire & Marine Ins. Co. v. United States,* 6 F.3d 763, 769 (Fed. Cir.1993). Here Customs concluded that the telecouplers perform telegraphic functions, and therefore classified them under heading 8517, HTSUS. Plaintiff failed to present evidence to dispute this conclusion. Modems are classified in heading 8517; telecouplers, if thought of as performing telegraphic functions in conjunction with modems, or if thought of as accessories to modems would have to be classified in this heading as well. On this record, the defendant must prevail.

---

**3.** Determining the common and commercial meaning of the term "accessory," in *Auto–Ordnance Corp., v. United States,* 822 F.2d 1566 (Fed.Cir.1987), the Court of Appeals for the Federal Circuit recognized that:

[s]ince the regulations neither specify what are the component parts of a complete [article], nor define the term "accessory," it is appropriate for the Court to look beyond the language of the regulation in order to ascertain the meaning of the term "accessories". . . An accessory is commonly defined as "a thing of

secondary or subordinate importance. An object or device that is not essential in itself but adds to the beauty, convenience or effectiveness of something else." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11 (1981). Another source defines accessory as "equipment, usually demountable and replaceable," that is added "for convenience, comfort, safety or completeness." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 11 (2d ed.1983).
822 F.2d at 1570.

CONCLUSION

Chapter Note 5(B) excludes the telecouplers from classification under heading 8471 and directs that they are classified according to their telegraphic function under heading 8517. *See Bauerhin Technologies Limited Partnership v. United States*, 914 F.Supp. 554, 561 (CIT 1995) ("where a Chapter Note clearly resolves any question of interpretation the court need look no further.") (citing *Nidec Corp. v. United States*, 68 F.3d 1333 (Fed.Cir.1995). Parts of the acoustic telecouplers also fall within the scope of Heading 8517.

Defendant's proposed classification under Heading 8517 encompasses the merchandise and is, on the record before the Court, the legally correct classification. Accordingly, for the reasons stated above, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted. The imported telecouplers and parts of telecouplers should be classified under HTSUS Headings 8517.82.00 and 8517.90.55, as other telegraphic apparatus and parts of telegraphic apparatus at 4.7% ad valorem.

## JUDGMENT ORDER

This matter having come before the court for decision; and the court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that Plaintiff's motion for summary judgment be, and hereby is, denied; and it is further

**ORDERED** that Defendant's motion for summary judgment be, and hereby is, granted; and it is further

**ORDERED** that the action be, and hereby is, dismissed.